# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### SOUTH BEND DIVISION

| | | |
|---|---|---|
| DAVID SNYDER and<br>DOROTHY SNYDER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 3:08-CV-00470 JD |
| | ) | |
| JACK D. TILLER, Individually and<br>in his Official Capacity as Marshal<br>of the Town of Roseland, and<br>TOWN OF ROSELAND, | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs David and Dorothy Snyder allege that Roseland Town Marshal Jack Tiller violated David Snyder's Fourth Amendment rights by arresting him without probable cause and using excessive force while doing so. [DE 1]. Plaintiffs also assert claims under the Eighth and Fourteenth Amendments, and seek punitive damages from Tiller and the Town of Roseland. *Id.*

Defendants Jack Tiller and the Town of Roseland counter that Tiller is entitled to qualified immunity for his conduct during Snyder's arrest because Tiller did not violate Snyder's Fourth Amendment rights. [DE 60 at 9-13]. Defendants assert that Snyder disturbed the town council meeting, elbowed Tiller as Snyder was exiting the meeting room, struck Tiller in the face as the pair exited the town hall building, and resisted arrest. *Id.* As a result, Defendants argue, Tiller had probable cause to arrest Snyder for disorderly conduct, battery, and resisting arrest. *Id.* Defendants also contend that Tiller did not use excessive force in striking Snyder during the arrest, because Snyder hit and kicked Tiller and resisted arrest by withholding his arms to avoid being handcuffed. [DE 60 at 13-19].

On January 20, 2010, Defendants filed a Motion for Summary Judgment on all claims [DE 41]. Plaintiffs filed their Response on March 9 [DE 60], and Defendants filed a Reply on March 30 [DE 66]. Both parties filed Rule 56 Motions to Strike challenging the admissibility of evidence offered in support of or in opposition to Defendants' Motion for Summary Judgment. [DE 56, 69].

Plaintiffs have also filed a Motion for Partial Summary Judgment [DE 44], which was stayed by the Magistrate Judge [DE 55] pending a ruling on Defendants' Motion for Summary Judgment. In addition to suspending briefing on Plaintiffs' motion, the Court also stayed discovery and briefing on all issues other than qualified immunity, directing that "the Court shall resolve the issue of qualified immunity before the case proceeds." [DE 55 at 2]. As a result, the Court will now only decide those issues necessary[1] to determine whether Tiller is entitled to qualified immunity.

## I. Facts

The following is a recitation of the undisputed facts in the case. The parties dispute other relevant facts.

On September 14, 2007, a public meeting for the Town of Roseland Town Council was held at the Roseland Town Hall. (Tiller Dep. 24:22-25:7, June 22, 2009; Penn Dep. 34:3-20, June 22, 2009; Schalk Dep. 35:15-24, Oct. 6, 2009; Beatty Dep. 22:4-11, Nov. 12, 2009.)

---

[1] *See generally Legg v. Pappas*, No. 09-1188, 2010 WL 2680536, at *2 (7th Cir. 2010) ("The district court excluded [the plaintiff]'s expert because his testimony about police department policies and standards of police practice was irrelevant to determining what is objectively reasonable under the Fourth Amendment. We agree."); *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003) ("To the extent that [an expert]'s report contains legal conclusions, it is deemed stricken on the ground that such testimony is inadmissible.").

At the time of the meeting, the Town Council consisted of three members: David Snyder, Ted Penn, and Charlie Shields, all of whom were present at the September 14 meeting. (Beatty Dep. 22:25-23:1; Tiller Dep. 17:21-25; Penn Dep. 32:19-24.) Shields was the Town Council president and presided over the meeting. (Tiller Dep. 21:21-23; Shields Dep. 56:5-7, Oct. 6, 2009.) As an "open door" meeting, about twenty-five members of the public were present in the audience. (Tiller Dep. 28:1-6; Shields Dep. 42:13-24; Beatty Dep. 23:5-12; Videotape: Town Council Meeting of Sept. 14, 2007 [hereinafter Pl.'s Ex. 1].) Also present were three uniformed Roseland police officers: Jack Tiller, Craig Toner, and Jeff Beatty. (Beatty Dep. 22:25-23:1; Penn Dep. 40:12-41:14; Shields Dep. 42:25-43:6; Tiller Dep. 25:6-21, 27:10-13; Pl.'s Ex. 1.) Jack Tiller was the Roseland Town Marshal at the time. (Tiller Dep. 13:14-19, 16:22-25, 27:20-24; Penn Dep. 41:9-18, 44:16-21; Beatty Dep. 23:13-15, 23:21-24.) Seated at the council table, from right to left as one faces the table, were town attorney Mike Lipsky, council member Ted Penn, council president Charlie Shields, council member David Snyder, and Town of Roseland clerk treasurer Cheryl Gridley. (Penn Dep. 36:2-25; Shields Dep. 40:23-41:7; Tiller Dep. 30:3-7; Pl.'s Ex. 1.)

From the meeting room, a single open door led to a small foyer, from which two closed glass doors opened onto the Town Hall's parking lot. (Beatty Dep. 24:11-25:7; Penn Dep. 50:21-52:11.) As one entered the meeting room from the foyer, a middle aisle led through two chaired sections of public seating to the council table at the front of the room where the council members, the town attorney, and the town clerk treasurer were seated. (Beatty Dep. 24:11-25:7; Penn Dep. 50:21-52:11; Pl.'s Ex. 1.) The three police officers were seated at the back of the audience section. (Tiller Dep. 27:10-13.)

3

During the September 14, 2007, town council meeting, council president Charlie Shields first recognized David Snyder and permitted him to speak, but then, after some arguing between Snyder and other council members, Shields withdrew the recognition, ruled Snyder out of order, and ordered that Snyder be removed from the meeting.  (Tiller Dep. 35:19-20, 36:17-22; Shields Dep. 55:6-9, 56:1-14; Penn Dep. 40:4-12; Schalk Dep. 86:9-11; Beatty Dep. 28:12-16; Pl.'s Ex. 1.)  Shields directed Marshal Tiller to remove Snyder from the meeting.  (Beatty Dep. 28:12-29:13; Penn Dep. 41:1-8; Shields Dep. 42:1-10; Pl.'s Ex. 1.)  Marshal Tiller and Officer Beatty came to the front of the meeting room where Snyder was seated.  (Tiller Dep. 37:13-25; Penn Dep. 41:9-25; Beatty Dep. 29:5-13; Pl.'s Ex. 1.)  Snyder arose from the table and collected his personal items, including a folder of documents, his video camera, a tripod to which the camera was attached, and a small bag.  (Beatty Dep. 29:19-22; Schalk Dep. 88:3-15; Penn Dep. 43:3-11; Shields Dep. 43:14-21; Tiller Dep. 16-20; Pl.'s Ex. 1.)  Carrying his camera and tripod in his left hand and his folder of documents and small bag in his right, Snyder began walking toward the door at the back of the meeting room, with Tiller trailing close behind and Officer Beatty following behind Tiller.  (Beatty Dep. 29:21-30:10; Shields Dep. 79:15-23; Pl.'s Ex. 1.)

As Snyder crossed the threshold of the doorway to the meeting room, he stopped, turned and looked over his right shoulder at Tiller, and said, "Oh, the bully's back."  (Beatty Dep. 30:12-14; Tiller Dep. 41:8-18, 42:4-12; Pl.'s Ex. 1.)  After making that statement, Snyder turned away from Tiller to face the foyer and the building's exit.  (Pl's Ex. 1.)  Tiller then grabbed Snyder by both shoulders.  (Pl.'s Ex. 1.)  The pair passed through the building's external double doors (which were closed until the pair's bodies opened them) and ended up on the ground outside the building.  (Tiller Dep. 45:1-2, 46:6-46:10; Shields Dep. 49:1-13; Pl.'s Ex. 1.)

At some point thereafter, while Snyder was on the ground on his side or face-down (Pl.'s Ex. 1; Schalk Dep. 92:8-11.), Tiller administered at least four closed-fist strikes to Snyder's face, head, right shoulder, and/or midsection. (Schalk Dep. 45:19-22; Shields Dep. 43:22-44:22; Tiller Dep. 50:4-8; Pl.'s Ex. 1.) Officers Toner and Beatty appeared to be tapping Tiller on the shoulders as he administered these strikes. (Pl.'s Ex. 1.) Tiller then took hold of Snyder's left arm and lifted it up behind Snyder's back, handcuffed Snyder, and walked away, leaving Snyder on his stomach surrounded by the other officers. (Pl.'s Ex. 1.) Tiller arrested Snyder for battery on a law enforcement officer, resisting law enforcement, and disorderly conduct. (Tiller Dep. 51:23-25).

## II. Defendants' Motion to Strike [DE 70]

Each party has filed a motion to strike portions of the evidence submitted by the other party in support of or in opposition to Defendants' Motion for Summary Judgement. In ruling on the Defendants' summary judgement motion, the Court will only consider evidence that would be admissible if offered at trial. Fed. R. Civ. P. 56(e)(1); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Patel v. Allstate Ins. Co.*, 105 F.3d 365, 371 n.6 (7th Cir. 1997) (declining to consider hearsay evidence in ruling on a motion for summary judgment); *Colan v. Cutler-Hammer, Inc.*, 812 F.2d 357, 365 n.14 (7th Cir. 1987) (refusing to consider inadmissible handwritten notes in rendering a decision on a motion for summary judgment).

Any affidavit submitted for the court's consideration in ruling on a motion for summary judgment must "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed R. Civ. P. 56 (e)(1). "[A]lthough personal knowledge may include reasonable inferences, those inferences

must be 'grounded in observation or other first-hand personal experience. They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience.'" *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003) (quoting *Visser v. Packer Eng'g Assoc.*, 924 F.2d 655, 659 (7th Cir. 1991) (en banc)). "[A]bsent evidence supported by specific facts," conclusory allegations are insufficient to "defeat a motion for summary judgment." *Payne*, 337 F.3d at 773 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). Moreover, a party generally may not "create an issue of fact by submitting an affidavit whose conclusions contradict [that party's own] prior deposition or other sworn testimony." *Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 292 (7th Cir. 1996).

Although self-serving statements unsupported by evidence are insufficient to overcome a motion for summary judgment, *Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001), the mere fact that an affidavit is self-serving does not preclude the court from denying summary judgment, as long as the affidavit meets the requirements of Rule 56(e). *See Payne*, 337 F.3d at 773 ("lay[ing] to rest the misconception that evidence presented in a 'self-serving' affidavit is never sufficient to thwart a summary judgment motion."). Additionally, "when considering a motion to strike portions of an affidavit in support of a motion for summary judgment, courts will only strike and disregard the improper portions of the affidavit and allow all appropriate recitations of fact to stand." *Hogue v. City of Fort Wayne*, 599 F. Supp. 2d 1009, 1016 (N.D. Ind. 2009) (quoting *Paniaguas v. Aldon Cos., Inc.*, No. 2:04-CV-468, 2006 WL 2568210, at *4 (N.D. Ind. Sept. 5, 2006)).

## A. David Snyder's Affidavit

### *1. Conclusory Statements and Legal Conclusions*

Defendants move to strike the entirety of paragraph four from Snyder's affidavit. [DE 70 at 11]. That paragraph attests, "At no point during my ordered removal from the Town Hall building did I provoke Marshal Tiller into responding in the manner depicted by the video, nor did I perform any act to resist Marshal Tiller while he effectuated my arrest." [DE 61-1]. Defendants contend that these assertions are conclusory statements and are legal arguments, both of which are by themselves insufficient to create an issue of material fact. *See Payne*, 337 F.3d at 773.

It is well established that affiants' conclusions of law are inadmissible. *See*, *e.g.*, *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003) ("To the extent that [an expert]'s report contains legal conclusions, it is deemed stricken on the ground that such testimony is inadmissible."); *United States v. Sinclair*, 74 F.3d 753, 757 n.1 (7th Cir. 1996) (holding that expert witnesses "cannot testify about legal issues on which the judge will instruct the jury"); *United States v. Johns-Manville Corp.*, 245 F. Supp. 74, 85 (E.D. Pa. 1965) (striking an affiant's denial that any personnel under his supervision "engaged in or acted in furtherance of any of the offenses charged in the complaint" as "broad, conclusionary legal language"). Similarly, the Court will strike from affidavits any conclusions that contradict the affiant's prior testimony under oath, *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 688 (7th Cir. 2008); *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1055 (7th Cir. 2000), "unless the affiant gives a plausible explanation for the discrepancy." *Beckel v. Wal-Mart Assocs., Inc.*, 301 F.3d 621, 623 (7th Cir. 2002).

Snyder's statements in his affidavit, however, do not constitute legal conclusions. Snyder first states that he did not provoke Marshal Tiller into responding as he did. (Snyder Aff. ¶ 4.) This is an assertion of fact–Snyder denies committing any act to provoke Tiller. Next, Snyder states that he did not "perform any act to resist Marshal Tiller while he effectuated my arrest." (Snyder Aff. ¶ 5.) To be sure, whether Snyder's conduct rose to the level of resisting arrest may influence the outcome of this case. But Snyder's plain language represents a simple denial that he "perform[ed] any act" to frustrate Tiller's efforts to arrest him. As Plaintiffs point out, this statement conveys Snyder's representation as to his conduct more completely than would an iteration of every act that Snyder did not engage in during his arrest. [DE 74 at 15].

## 2. Cumulative Statements

Defendants next allege that "Snyder's affidavit is cumulative because its only purpose is to draw conclusions based upon the facts in the video." [DE 70 at 11]. The Court disagrees with this contention on two fronts. First, Snyder's assertions are not based on his observations of the video; they are based on his personal knowledge of his own conduct. Second, Snyder's assertions are not cumulative. What the video shows is open to interpretation by a finder of fact. Snyder has not been deposed in this case, and his statements establish in testimony what Snyder observed at the town meeting–an issue central to the resolution of this case. The video provides additional evidence on what occurred. Snyder contends that the video supports his version of events, but that fact alone does not render Snyder's sworn testimony mere surplusage. *See Jackim v. Sam's East, Inc.*, Nos. 07-3514, 08-4701, 2010 WL 2101962, at *7 (6th Cir. May 25, 2010) ("[Affiant's] knowledge of the day did not come from the video, but his own senses and memory. The fact that a video recording may at times be in fact the 'best' evidence of what

occurred does not render first-hand testimony of the event incompetent."). Moreover, the video did not necessarily record all interactions between Snyder and Tiller. For example, Tiller's body partially obstructs the camera's view as he and Snyder pause at the door to the meeting room, and the pair temporarily moves out of the camera's sight as they exit the meeting room. (Pl.'s Ex. 1.) Snyder's affidavit provides relevant, non-cumulative assertions of fact as to what transpired during these periods.

Since the statements in paragraph four of Snyder's affidavit constitute assertions of fact rather than legal conclusions and are not cumulative, that portion of Snyder's affidavit is admissible.

## B. Video of the Meeting

Defendants argue that Plaintiffs' video is inadmissible for several reasons.

### 1. Lacking Foundation for a "Lost Original" Exception

Defendants first claim that the video should be excluded from evidence because Plaintiffs did not lay a foundation for a "lost original" exception to Federal Rule of Evidence 1002's originality requirement (also known as the "Best Evidence Rule"). [DE 75 at 7]. Rule 1002 mandates that "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress." Fed. R. Evid. 1002. *See also* Fed. R. Evid. 1001(2) ("'Photographs' include still photographs, X-ray films, video tapes, and motion pictures."). An exception to the originality requirement can be found in Rule 1004, which permits the admission of a duplicate in lieu of an original under several circumstances, including when "[a]ll originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith[.]" Fed. R. Evid. 1004(1);

*see also United States v. Shriver*, 842 F.2d 968, 976 n.10 (7th Cir. 1988) (applying this provision). To take advantage of this exception, however, a party must establish "that the original has actually been destroyed." *United States v. McGaughey*, 977 F.2d 1067, 1071 (7th Cir. 1992); s*ee also Shriver*, 842 F.2d at 976 n.10 (applying these rules).

Defendants allege that Plaintiffs have failed to make such a showing, [DE 75 at 7] and instead offer only unsworn assertions in pleadings that the television studio only provided Plaintiffs an edited version of the video. [DE 74 at 16]. Defendants urge the Court to exclude the video from evidence on this ground.

However, Defendants overlook one central element of Rule 1002: an original is required only "to prove the content" of a video. As the Advisory Committee note to Rule 1002 explains,

> The assumption should not be made that the rule will come into operation on every occasion when use is made of a photograph in evidence. . . . The usual course is for a witness on the stand to identify the photograph or motion picture as a correct representation of events which he saw or of a scene with which he is familiar. In fact he adopts the picture as his testimony, or, in common parlance, uses the picture to illustrate his testimony. Under these circumstances, no effort is made to prove the contents of the picture, and the rule is inapplicable.

Fed. R. Evid. 1002 advisory committee's note. If, on the other hand, a witness were to seek to testify about events he only knows about from watching a video, the original video would be required unless an exception applied. *Id.*; *see also United States v. Bennett*, 363 F.3d 947, 953 (9th Cir. 2004) ("[T]he rule is inapplicable when a witness merely identifies a photograph or videotape 'as a correct representation of events which he saw or of a scene with which he is familiar.'") (quoting Fed. R. Evid. 1002 advisory committee's note); Fed. R. Evid. 901(b)(1) (permitting authentication through the testimony of a witness with knowledge of the matter).

As the Advisory Committee note to Rule 1002 contemplates, Snyder adopts the video in this case as his testimony. Plaintiffs do not seek to prove the contents of the video, but rather what happened at the town meeting. *See Jackim*, 2010 WL 2101962, at *7 ("Defendants were not trying to prove the content of a recording, but what actually occurred on the day (which also happened to be captured by videotape as well as viewed by other witnesses)."). Because the contents of the video are not at issue, the original is not required and Plaintiffs need offer no excuse for its absence.

### 2. Insufficient Authentication

The video in this case is offered as a duplicate of the recording made by the television studio. "A 'duplicate' is a counterpart produced by the same impression as the original, or from the same matrix, or by means of photography, including enlargements and miniatures, or by mechanical or electronic re-recording, or by chemical reproduction, or by other equivalent techniques which accurately reproduces the original." Fed. R. Evid. 1001(4). Federal Rule of Evidence 1003 states that "[a] duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." Fed. R. Evid. 1003; *see also United States v. Sinclair*, 74 F.3d 753, 760-61 (7th Cir. 1996) (finding the district court's admission of incomplete duplicate documents fair because the omissions did not impair the documents' usefulness); *United States v. Bolton*, 977 F.2d 1196, 1202 (7th Cir. 1992) (upholding the district court's decision to admit partial copies of documents because they "presumably contain all of the information in the originals").

Here, Defendants have not disputed whether the video actually depicts the town council meeting from which Snyder was ejected, but they do argue that Snyder's affidavit is insufficient to authenticate the video.[2]  Although authentication may be achieved in many ways, Federal Rule of Evidence 901(b) provides some examples of authentication, one of which is the testimony of a "witness with knowledge" "that a matter is what it is claimed to be."  Fed. R. Evid. 901(b)(1); *see also United States v. Dombrowski*, 877 F.2d 520, 524 (7th Cir. 1989) (stating that a party must present "evidence sufficient to support a finding that the matter in question is what its proponent claims"); *United States v. Nolan*, 818 F.2d 1015, 1017 (1st Cir. 1987) (calling authentication a "threshold" issue and noting that the ultimate question as to whether evidence is probative is properly decided on the merits).  The Seventh Circuit has upheld the authentication of duplicate audio tapes–even tapes that contained background conversations unrelated to the case before the court.  *United States v. Boyd*, 208 F.3d 638, 644-45 (7th Cir. 2000), *vacated on other grounds*, 531 U.S. 1135 (2001).

While video enhanced to improve clarity is routinely held admissible as a duplicate, the enhanced portion of the video must still be authenticated by the individual who made the enhancements.  *See United States v. Seifert*, 445 F.3d 1043, 1045 (8th Cir. 2006); *United States v. Carbone*, 798 F.2d 21, 25 (1st Cir. 1986); *United States v. Beeler*, 62 F. Supp. 2d 136, 149 (D. Me. 1999).  That process commonly includes a description of the changes made and an attestation that the enhanced version accurately represents the original.  *See*, *e.g.*, *Seifert*, 445

---

[2] Defendants also allege that the slow-motion replay portion of the video violates Rule 1003 fairness [DE 70 at 12-13], would be overly prejudicial [DE 75 at 7], and improperly draws focus to Officer Tiller.  [DE 75 at 8].  As discussed below, the Court need not address these arguments at this time.

F.3d at 1045; *Carbone*, 798 F.2d at 25, *Beeler*, 62 F. Supp. 2d at 149.

In this case, Snyder seeks to authenticate the video of the town council meeting by stating in his affidavit that he "reviewed the entire videotape attached to Plaintiffs' Memorandum in Support of Their Motion for Partial Summary Judgment and attest that it accurately depicts the actual scene and events as they appeared on September 14, 2007 at the Roseland Town Hall." [DE 61-1]. Defendants argue that because the video has been altered to include an additional close-up, slow-motion replay of one segment of the recording (inserted from minute 1'53" to 2'04"), Snyder cannot attest to the accuracy of the video's depiction. This assertion is only half correct. Snyder has personal knowledge of the events that transpired at the meeting because he was present. His authentication of the entire regular-speed portion of the video is therefore sufficient to satisfy Federal Rule of Evidence 901's authentication requirement. However, Snyder did not suggest that he personally altered the video to add the slow-motion replay; the pleadings represent that it was altered by an unknown television station employee. [DE 74 at 16]. Nowhere in the record is there a description of the process by which the slow-motion replay was created. As a result, the close-up, slow-motion segment of the video has not been properly authenticated, and is not admissible. *See Seifert*, 445 F.3d at 1045 (finding an enhanced recording sufficiently authenticated where the individual who made the enhancements testified as to the processes employed); *Carbone*, 798 F.2d at 25 (same), *Beeler*, 62 F. Supp. 2d at 149 (same); *see also United States v. Goldin*, 311 F.3d 191, 197 (3d Cir. 2002) (holding such testimony unnecessary for authentication when a video authenticated in full has only been edited to exclude irrelevant content). The remainder of the video, however, has been properly authenticated by Snyder. Since it is presumably identical to the original video of the town

13

council meeting, it would not be unfair to admit the remainder of the video into evidence.

### 3. Risk of Prejudice Outweighs Probative Value

Defendants next argue that the entirety of the video after the 1'53" mark should be excluded because it is incomplete, has low probative value, and is unfairly prejudicial. [DE 70 at 13-15]. They argue that because Snyder and Tiller were out of the camera's sight when they entered the Town Hall foyer and then exited the building, the video is an incomplete recording of the events that transpired, and admitting it would therefore unfairly prejudice the Defendants. [DE 70 at 13-14]. Additionally, they argue that the portion of the video before the 1'53" mark should be excluded because the camera angle and distance from Snyder and Tiller "does not allow for a clear view of the events that transpired[.]" [DE 70 at 14]. Finally, Defendants suggest that admitting the video will wrongly encourage jurors to judge Officer Tiller's conduct "with the 20/20 vision of hindsight" rather than "from the perspective of a reasonable officer on the scene." [DE 70 at 15].

Federal Rule of Evidence 106 (the "Rule of Completeness") provides that "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." Fed R. Evid. 106. Pursuant to this rule, when one party moves to admit a portion of a video into evidence, the opposing party is often granted leave to admit any other portion of the video in the interest of fairness. *See Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 172 (1988) ("[W]hen one party has made use of a portion of a document, such that misunderstanding or distortion can be averted only through presentation of another portion, the material required for completeness is ipso facto

14

relevant and therefore admissible under Rules 401 and 402.").  Furthermore, the editing of a video to remove extraneous material does not affect the video's admissibility.  *Oriental Health Spa v. City of Fort Wayne*, 864 F.2d 486, 491 (7th Cir. 1988); *see also United States v. Sherman*, 293 Fed. Appx. 158, 159 (3d Cir. 2008) (holding the remainder of a video admissible even though a potentially-relevant segment was destroyed, on the ground that the opposing party had not demonstrated that the segment was destroyed in bad faith).

Here, Defendants do not suggest that the video presented to the Court has been edited to exclude any recording helpful to Defendants' case.  Defendants do not assert that any recording was made of Snyder and Tiller as they entered the foyer and spilled into the building parking lot. The video itself suggests that no such recording was made; Snyder and Tiller moved out of the camera's sight and remained out of sight until the cameraman was able to catch up to them, at which point Snyder was already on the ground.  (Pl.'s Ex. 1.)  While Defendants assert that Snyder struck Tiller as the pair exited the building, there is no indication that any video showing Snyder and Tiller during this period exists.  As a result, the submitted video is not incomplete, and Rule 106 is inapplicable.

Defendants' arguments regarding the entire video's prejudicial effect and low probative value as a result of the camera angle and the distance from Snyder and Tiller are likewise unsupported by law.  [DE 70 at 14-15].  Federal Rule of Evidence 403 states that relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid. 403.  Mere prejudice to one party, however, is not sufficient to justify excluding evidence–the evidence

must be *unfairly* prejudicial. *United States v. Curry*, 79 F.3d 1489, 1496 (7th Cir. 1996). Rule 403's Advisory Committee note defines "unfair prejudice" as "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 advisory committee's note. All in all, "the more probative the evidence, the more the court will tolerate some risk of prejudice." *United States v. Torres*, 977 F.2d 321, 328 (7th Cir. 1992).

In the instant case, the Court concludes that the video's prejudicial effect, if any, does not outweigh its probative value. As an unbiased account of the events that transpired, the unedited video provides an impartial and clear perspective of all action visible to the camera. The camera angle, distance to Snyder and Tiller, and the portion of events not recorded go only to the weight of the video evidence, not to its admissibility. Moreover, should this case proceed to trial, the jury will likely be instructed on the relevant legal standard by which to judge Officer Tiller's conduct. As a result, nothing now before the Court suggests that the video will create an undue tendency for the jury to decide the case on any improper basis.

### III. Defendants' Motion for Summary Judgment [DE 41]

**A. Standard for Granting Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). "In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying" the evidence which "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law." *Brown v. City of Lafayette*, No. 4:08-CV-69, 2010 WL 1570805, at *2 (N.D. Ind. Apr. 16, 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Once the moving party has met this burden, the nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *Beard v. Whitley Cnty. REMC*, 840 F.2d 405, 410 (7th Cir. 1988). To establish a genuine issue of fact, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial, not "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *First Nat'l Bank of Cicero v. Lewco Secs. Corp.*, 860 F.2d 1407, 1411 (7th Cir. 1988). "It is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which he relies." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008). If the nonmoving party fails to establish the existence of an essential element on which it bears the burden of proof at trial, summary judgment is proper–even mandated. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006) (citing *Celotex*, 477 U.S. at 322-23) (holding that a failure to prove one essential element

"necessarily renders all other facts immaterial")).

In ruling on a motion for summary judgment, a court must view all facts in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999); *NUCOR Corp. v. Aceros Y Maquilas de Occidente*, 28 F.3d 572, 583 (7th Cir. 1994). A court must avoid the temptation to "make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Summary judgment is not a substitute for a trial on the merits or a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, the court's sole task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Payne*, 337 F.3d at 770; *Waldridge*, 24 F.3d at 920. If a reasonable factfinder could find in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770.

Thus, in responding to Defendants' Motion for Summary Judgment, the Court must credit Plaintiffs' version of the facts. In so doing, the Court does not vouch for the truth of those facts, but merely uses them to determine whether a genuine issue for trial exists. *See Herzog v. Vill. of Winnetka*, 309 F.3d 1041, 1044-45 (7th Cir. 2002).

**B. Qualified Immunity**

Defendants have satisfied their initial burden of laying out the basis for their motion and identifying the evidence that supports it. Specifically, testimony in depositions cited by Defendants suggests that Tiller is entitled to qualified immunity for his conduct during Snyder's arrest. Given this threshold showing by Defendants, Plaintiffs now bear the burden of proving

that a genuine issue of material fact exists as to whether Officer Tiller is protected by qualified immunity in order to defeat Defendants' Motion for Summary Judgment on that issue.

As a threshold matter, the discussion of whether Tiller may claim qualified immunity as a matter of law addresses Plaintiffs' action against Tiller in his individual capacity. In the Seventh Circuit, qualified immunity is "a defense available solely to officials facing § 1983 suits in their individual capacities." *Miller v. Smith*, 220 F.3d 491, 494 (7th Cir. 2000). The Circuit has spelled out that "[w]here the plaintiff seeks injunctive relief from official policies or customs, the defendant has been sued in her official capacity; where the plaintiff alleges tortious conduct of an individual acting under color of state law, the defendant has been sued in her individual capacity." *Id.* at 494 (citing *Hill v. Shelander*, 924 F.2d 1370, 1373-74 (7th Cir. 1991)). Under these parameters, since Defendants have moved for summary judgment on the issue of qualified immunity, the Court will only consider the suit against Tiller individually, and this Court's ruling on Defendants' Motion for Summary Judgment will be limited accordingly.

The defense of qualified immunity protects police officers from liability when they have a reasonable belief that their conduct is lawful. *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009) (citing *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987)). "The doctrine allows 'ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'" *Gonzalez*, 578 F.3d at 540 (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).

The Supreme Court has established a two-part test for determining when an officer is not entitled to summary judgment on qualified immunity. An officer may not be granted immunity as a matter of law when (1) the facts, taken in the light most favorable to the plaintiffs, show that

the defendant officer violated a constitutional right; and (2) when that constitutional right was clearly established at the time of the alleged violation. *Pearson v. Callahan*, 555 U.S. ___, 129 S.Ct. 808, 815-16 (2009); *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If a plaintiff cannot establish at minimum that a genuine issue of material fact exists as to both inquiries, the officer must be granted qualified immunity as a matter of law. *Pearson*, 129 S.Ct. at 815-16; *Saucier*, 533 U.S. at 201. However, "[w]hen the qualified immunity inquiry cannot be disentangled from disputed facts, the issue cannot be resolved without a trial." *Gonzalez*, 578 F.3d at 540 (quoting *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996)). The Court may address these issues in whichever order best suits the case at hand. *Pearson*, 129 S.Ct at 818.

Courts have long noted that "§ 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). When a false arrest or excessive force claim "arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right to be secure in their persons . . . against unreasonable . . . seizures." *Duran v. Sirgedas*, 240 Fed. Appx. 104, 112 (7th Cir. 2007) (quotations omitted) (citing *Graham*, 490 U.S. at 394). As the Court explained in *Graham*, once the constitutional right at issue is identified, "[t]he validity of the claim must then be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized 'excessive force' standard." 490 U.S. at 394.

Here, Plaintiffs allege both that Tiller did not have probable cause to arrest Snyder and that Tiller's use of force in effecting Snyder's arrest was excessive. [DE 60 at 8-22]. Because

the Fourth Amendment protects individuals against unreasonable seizures, Plaintiffs' § 1983

claims are properly analyzed under the Fourth Amendment's reasonableness standard. *See*

*Duran*, 240 Fed. Appx. at 112. To defeat Defendants' Motion for Summary Judgment, then,

Plaintiffs must show either that a genuine question of material fact exists as to whether Tiller had

probable cause to seize Snyder or as to whether Tiller's use of force in seizing Snyder was

reasonable.

### 1. A Genuine Question of Material Fact Exists as to Whether Tiller Violated Snyder's Constitutional Rights

a. Probable Cause

For a false arrest claim to succeed, the plaintiff must show that the officer lacked

probable cause to arrest the plaintiff. *See Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998)

("An essential predicate to any § 1983 claim for unlawful arrest is the absence of probable

cause."). Probable cause "is an absolute defense to any claim under Section 1983 against police

officers for wrongful arrest." *Williams v. Rodriguez*, 509 F.3d 392, 398 (7th Cir. 2007) (quoting

*Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006)).

A police officer has probable cause for an arrest if, at the time of the arrest, the "facts and

circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or

one of reasonable caution, in believing, in the circumstances shown, that the suspect has

committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S.

31, 37 (1979); *Gonzalez*, 578 F.3d at 537. In determining whether probable cause exists, the

court does not evaluate "the facts as an omniscient observer would perceive them," but rather "as

they would have appeared to a reasonable person in the position of the arresting officer."

*Mustafa*, 442 F.3d at 547 (quoting *Kelley*, 149 F.3d at 646); *see also Chelios v. Heavener*, 520

F.3d 678, 686 (7th Cir. 2008) (same). Likewise, "[i]t is well established that 'the officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause.'" *McCann v. Hood*, No. 1:07-CV-519, 2009 WL 276792, at *8 (S.D. Ind. Feb. 3, 2009) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)). "Probable cause to believe that a person has committed any crime will preclude a false arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause." *Holmes v. Vill. of Hoffman Estate*, 511 F.3d 673, 682 (7th Cir. 2007) (citations omitted).

Tiller asserts that he had probable cause to arrest Snyder for battery, resisting arrest, and disorderly conduct. [DE 42 at 9-13]. Snyder argues that Tiller did not have probable cause to arrest him for any of these offenses. [DE 60 at 9-14]. If, in the light most favorable to Plaintiffs, the evidence indicates that a reasonable jury could conclude that Tiller lacked probable cause to arrest Snyder for each of these three offenses, Defendants are not entitled to summary judgment on qualified immunity as it relates to Plaintiffs' false arrest claim.

### i. Battery

"Whether an officer has probable cause to arrest depends on the requirements of the applicable state criminal law." *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 761 (7th Cir. 2006) (citing *Williams v. Jaglowski*, 269 F.3d 778, 782 (7th Cir. 2001)). In Indiana, "[a] person who knowingly or intentionally touches another person in a rude, insolent, or angry manner, commits battery." Ind. Code § 35-42-2-1 (2005). Defendants allege that Snyder committed battery against Tiller by (1) elbowing him in the chest in the doorway of the meeting room, (2) hitting him with an open hand outside the building, and (3) kicking him as Tiller tried to effect Snyder's arrest. [DE 42 at 11]. Snyder denies committing any of these acts. [DE 60 at 13].

The parties have presented conflicting evidence on whether Snyder struck Tiller with his elbow. Defendants offer deposition testimony from witnesses indicating that contact did occur. (Tiller Dep. 42:23, 43:18-24; Penn Dep. 47:10-50:6; Schalk Dep. 39:8-40:9; 89:7-11.) Snyder, however, states that he did not elbow Tiller, and has presented a video in support of this claim. (Snyder Aff. ¶ 4; Pl.'s Ex. 1.) Snyder's elbow and Tiller's chest are not clearly visible in the video, but the video does show the two men's body postures and provides some indication as to the movement of Snyder's limbs. Although "one cannot conclusively say that the touching did not occur" based on the video, [DE 66 at 5], the video does create the potential for reasonable people to disagree about whether a touching occurred.

Additionally, battery in Indiana requires that the touching be committed "knowingly or intentionally." Ind. Code § 35-42-2-1 (2005). Neither party has presented evidence indicating that Tiller believed any contact between Snyder's elbow and Tiller's chest to be committed knowingly or intentionally. In his deposition, Tiller does not indicate that he drew this conclusion, instead stating only that he "got struck in the chest." (Tiller Dep. 42:23.) Witness Michael Schalk explicitly stated that he did not know whether the act was intentional. (Schalk Dep. 40:6-7, 89:12-16.) In the absence of evidence on this element, the Court cannot draw the conclusion that Tiller believed, reasonably or not, that a battery had been committed against him.

Evidence on whether Snyder hit Tiller with an open hand or kicked him is equally open to interpretation. Tiller asserts that he was hit in the face and kicked. (Tiller Dep. 49:23-50:2.) Snyder denies engaging in such conduct. (Snyder Aff. ¶¶ 4-5.) Of the nonparty witnesses deposed in this case, only Michael Schalk witnessed the scuffle that ensued immediately after Snyder and Tiller exited the building. (Penn Dep. 54:2-7; Shields Dep. 79:8-11; Beatty Dep.

32:1-9.)  Schalk stated that he never saw Snyder strike Tiller once the two were outside the building (Schalk Dep. 92:8-15), but admitted that such contact could have occurred during an interval when Schalk was not looking at the pair.  (Schalk Dep. 100:15-25.)  The video does not show this portion of the incident.  (Pl.'s Ex. 1.)

Taken in the light most favorable to the Plaintiff, this conflicting evidence creates a genuine issue of fact–whether Snyder did elbow, strike, or kick Tiller–for the finder of fact to resolve.  This issue is material because Snyder would have lacked probable cause to arrest Snyder for battery if no touching actually occurred.

*ii. Resisting Arrest*

In Indiana, a person resists arrest if he "knowingly or intentionally . . . forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of the officer's duties."  Ind. Code § 35-44-3-3(a) (2006).  The use of force is required to violate this statute, although force may be found even where a suspect does not commit an act of violence toward an officer.  Spangler v. State, 607 N.E.2d 720, 724 (Ind. 1993) (indicating that a "movement or threatening gesture made in the direction of [an] official" would constitute force under the statute); see also Potts v. City of Lafayette, 121 F.3d 1106, 1113 (7th Cir. 1997) (applying Spangler's interpretation of Indiana law).

Snyder denies provoking Tiller at any point, and argues that he did not resist being arrested in any way.  (Snyder Aff. ¶¶ 4-5.)  The record reflects that no deposed, nonparty witness saw everything that happened as and after the two exited the building.  (Penn Dep. 54:2-7; Shields Dep. 54:4-55:8, 76:24-77:6; Schalk Dep. 100:15-25; Beatty Dep. 34:1-35:5.)  Officers

Tiller and Beatty and Michael Schalk testified that Snyder resisted being handcuffed (Tiller Dep. 49-51; Beatty Dep. 32:10-33:9; Schalk Dep. 42:17-20), but Charlie Shields stated that he saw no such resistance. (Shields Dep. 69:7-9.) The video shows that a scuffle ensued moments after Snyder and Tiller exited the building. (Pl's Ex. 1.) But the video fails to establish conclusively whether Snyder knowingly or intentionally resisted, obstructed, or interfered with Tiller's efforts to arrest him, or whether Snyder's arms were simply pinned beneath his own torso. *Id.* The finder of fact must determine what actually occurred. As a result, taken in the light most favorable to the nonmoving party, the Plaintiffs have presented evidence sufficient to demonstrate a genuine issue of material fact as to whether any conduct by Snyder could give Tiller probable cause to believe that Snyder resisted arrest.

### *iii. Disorderly Conduct*

Under Indiana law, "[a] person who recklessly, knowingly, or intentionally: (1) engages in fighting or in tumultuous conduct; (2) makes unreasonable noise and continues to do so after being asked to stop; or (3) disrupts a lawful assembly of persons" has committed the offense of disorderly conduct. Ind. Code § 35-45-1-3 (2006). The Indiana Code defines "tumultuous conduct" as "conduct that results in, or is likely to result in, serious bodily injury to a person or substantial damage to property." Ind. Code § 35-45-1-1 (2004). By itself, constitutionally-protected speech is not "tumultuous conduct", but "fighting words" which are "stated as a personal insult to the hearer in language inherently likely to provoke a violent reaction" can rise to the level of tumultuous conduct. *Brown v. State*, 576 N.E.2d 605, 607 (Ind. Ct. App. 1991). Verbal criticism to police officers about how they are performing their duties qualifies as political expression, and does not violate this statute. *See*, *e.g.*, *Hogue v. City of Fort Wayne*,

599 F. Supp. 2d 1009, 1026-27 (N.D. Ind. 2009); *Price v. State*, 622 N.E.2d 954, 964-65 (Ind. 1993); *Shoultz v. State*, 735 N.E.2d 818, 825-27 (Ind. Ct. App. 2000). Moreover, political expression only becomes "unreasonably noisy" for purposes of Indiana Code section 35-45-1-3(2) when it inflicts "harm analogous to that which would sustain tort liability against the speaker," *Price*, 622 N.E.2d at 964, because "the law does not deal in trifles." *Wernke v. Halas*, 600 N.E.2d 117, 122 (Ind. Ct. App. 1992).

In this case, taken in the light most favorable to Plaintiffs, a reasonable jury could conclude that Snyder's conduct does not rise to the level of criminal disorderly conduct. The video shows that Snyder did argue with the other members of the town council on issues of town governance, called Ted Penn a "senile old fart," and said "Oh, the bully's back" to Marshal Tiller. (Pl's. Ex. 1.) A reasonable jury could conclude that such comments do not rise to the level of "fighting words." *Contra Brown*, 576 N.E.2d at 607 (defendant loudly and repeatedly challenged officers to fight and threatened to kill them). A reasonable jury could find that Snyder's comments did not seem inherently likely to produce a violent reaction, and that the meeting atmosphere did not suggest an imminent brawl. While Snyder did raise his voice during the argument, all arguing council members raised their voices as the argument became more intense. (Tiller Dep. 35:24-36:9; Pl.'s Ex. 1.) This suggests that the volume of Snyder's voice might not have been unreasonably loud. Additionally, Snyder's verbal criticism to Tiller seems to constitute the sort of political expression found not to violate the statute. Given these factors and inferences, a jury could reasonably conclude that Snyder's speech did not disturb the council meeting to the level contemplated by the criminal statute. Accordingly, a genuine issue of material fact exists as to whether Tiller had probable cause to arrest Snyder for disorderly

conduct.

*iv. Probable Cause Conclusion*

Whether an officer has probable cause is "a proper issue for a jury if there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them." *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993).  As discussed previously, Snyder's affidavit is based on personal knowledge, not mere speculation or rumor, and the Court may not strike it from the record simply because it is self-serving.  Snyder's affidavit avers that Snyder did not "provoke Marshal Tiller into responding in the manner depicted by the video" or "perform any act to resist Marshal Tiller while he effected [Snyder's] arrest."  (Snyder Aff. ¶¶ 4-5.)  The video could reasonably be seen to support these statements.  Taken in the light most favorable to the Plaintiffs, the sum of the evidence would allow a reasonable jury to conclude that Tiller lacked probable cause to arrest Snyder.

b. Excessive Force

The Fourth Amendment's "reasonableness" standard governs claims that an officer used excessive force in the course of making a seizure.  *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Abdullahi v. City of Madison*, 423 F.3d 763, 768 (7th Cir. 2005); *Gonzalez*, 578 F.3d at 539.  The reasonableness inquiry requires the court to balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  *Graham*, 490 U.S. at 396; *Morfin v. City of E. Chicago*, 349 F.3d 989, 1004 (7th Cir. 2003); *Gonzalez*, 578 F.3d at 539.  In reviewing an officer's use of force, the court must give "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or

others, and whether he is actively resisting arrest or attempting to evade arrest by flight."
*Graham*, 490 U.S. at 396; *Gonzalez*, 578 F.3d at 539.  In sum, "the question is whether a
reasonable officer in the same circumstances would have concluded that a threat existed
justifying the particular use of force." *Duran v. Sirgedas*, 240 Fed. Appx. 104, 112 (7th Cir.
2007) (citing *Graham*, 490 U.S. at 396-97).  In making this determination, the court must bear in
mind that "police officers are often forced to make split-second judgments–in circumstances that
are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a
particular situation." *Graham*, 490 U.S. at 396-97.  A "police officer's use of force is
unconstitutional if, 'judging from the totality of the circumstances at the time of the arrest, the
officer used greater force than was reasonably necessary to make the arrest.'" *Fidler v. City of
Indianapolis*, 428 F. Supp. 2d 857, 862 (S.D. Ind. 2006) (quoting *Payne v. Pauley*, 337 F.3d 767,
778 (7th Cir. 2003)).

Plaintiffs claim that Tiller used excessive force in physically removing Snyder from the
Town Hall and in striking Snyder when he was lying on the ground.

### i. Removal from the Meeting Room

Whether Tiller's physical removal of Snyder was reasonable depends on whether Tiller
reasonably concluded that Snyder posed a threat to the officers or others at the meeting–a
determination heavily influenced by whether Snyder's elbow came into contact with Tiller, and,
if so, whether a reasonable officer in Tiller's position would believe that he had been subjected
to a battery under those circumstances.  Police may certainly "us[e]a higher degree of force to
restrain a suspect whom they reasonably believe to be dangerous[.]" *Thomas v. City of Fort
Wayne*, No. 1:06-CV-320, 2008 WL 282348, at *5 (N.D. Ind. Jan. 31, 2008) (citing *Smith v. City*

*of Chicago*, 242 F.3d 737, 743-44 (7th Cir. 2001)).  If Snyder did not contact Tiller in the manner noted above, a jury might reasonably conclude that Tiller's use of force to hasten Snyder's egress was excessive.  The atmosphere in the meeting room while Snyder was exiting, about which there is also a factual dispute, would provide additional relevant context in which to review Tiller's conduct.  (*Compare* Tiller Dep. 75:4-76:5 (Tiller had concern for Snyder's "safety and well-being") *with Id.* 37:11-12 ("I don't recall any direct threats or anything like that."); Beatty Dep. 29:18 ("[Snyder] went peacefully"); Shields Dep. 80:3-8 (Snyder did not look "riled up" or as if he was going to act in an "uncivilized manner").)  If the atmosphere did not indicate that violence might erupt, a jury might reasonably conclude that Tiller was not justified in physically escorting Snyder out of the building.  Taken in the light most favorable to the Plaintiffs, Snyder's affidavit and video suggest that no elbow was thrown and that the meeting's atmosphere was not indicative of violence.  Thus, a jury could reasonably conclude that Tiller's use of force was not reasonable.

### *ii. Tactical Strikes*

Similarly, the reasonableness of Tiller's use of "tactical strikes" before handcuffing Snyder depends on whether he was resisting arrest.  Officers may use some force against suspects who resist arrest.  *See*, *e.g.*, *Duran*, 240 Fed. Appx. at 117 (holding that an officer did not use excessive force when he struck a suspect with a baton and punched him in the head after the suspect struggled against officers and bit one of them).  Of course, "[e]ven while resisting an arrest, an arrestee can be subjected to force excessive for the situation."  *DuFour-Dowell v. Cogger*, 969 F. Supp. 1107, 1118 (N.D. Ill. 1997).  Officers' right to use force against suspects who do not resist arrest, however, is much more limited.  *See*, *e.g.*, *Baker v. City of Hamilton*,

471 F.3d 601, 607 (6th Cir. 2006) (finding that an officer used excessive force where a suspect emerged from bushes with his hands up, and the officer struck suspect in the head, knocking him to the ground, then later struck suspect in the knee, yelling, "That's for running from me!"). For example, this Court has previously held that officers may not strike a suspect in the head after determining that he was not resisting arrest. *Thomas*, 2008 WL 282348, at *5. Here, Snyder represents that he did not resist being arrested and presents a video which could lead a reasonable jury to accept his version of the facts. (Snyder Aff. ¶ 5; Pl.'s Ex. 1.) Thus, in the light most favorable to the Plaintiffs, the evidence presents a genuine issue of material fact as to whether Tiller's use of force in striking Snyder was reasonable.

### c. Violation of Constitutional Rights Conclusion

Qualified immunity can still protect "officers who make a reasonable error in determining whether there is probable cause to arrest an individual." *Chelios v. Heavener*, 520 F.3d 678, 690-91 (7th Cir. 2008) (citing *Anderson v. Creighton*, 483 U.S. 635, 643 (1987)). However, taken in the light most favorable to the Plaintiffs, the evidence could lead a reasonable jury to conclude that "a reasonable police officer in the same circumstances and with the same knowledge" as Marshal Tiller could not "have reasonably believed that probable cause existed in light of well-established law." *Williams v. Jaglowski*, 269 F.3d 778, 781 (7th Cir. 2001); *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998). Likewise, such a jury could conclude reasonably that Tiller's use of force was unreasonable under the circumstances. Because a reasonable jury could so conclude, this Court finds that Plaintiffs have met their burden of showing that a genuine question of material fact exists as to whether Tiller violated Snyder's Fourth Amendment rights.

### 2. A Genuine Question of Material Fact Exists as to Whether Any Right Violated Was "Clearly Established"

The second step of the qualified immunity analysis requires the plaintiff to show that the constitutional right violated was "clearly established" at the time of the violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202; *Thomas*, 2008 WL 282348, at *6. A plaintiff can show that a right is "clearly established" by "point[ing] to a clearly analogous case establishing a right to be free from the specific conduct at issue" or by showing that "the conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights." *Smith*, 242 F.3d at 742. A plaintiff need not cite a case with facts identical to his own–rather "the question is whether a reasonable officer would have known that his actions were unlawful." *Thomas*, 2008 WL 282348, at *6 (citing *Green v. Butler*, 420 F.3d 689, 701 (7th Cir. 2005)).

Under the version of the facts most favorable to the non-moving party, Plaintiffs have shown that Tiller arrested Snyder without probable cause, as discussed previously. The right to be free from "a full-blown arrest that is not supported by probable cause . . . has been clearly established for a long time." *Gonzalez*, 578 F.3d at 541; *see also Chelios v. Heavener*, 520 F.3d 678, 691 (7th Cir. 2008) (denying qualified immunity because the arresting officer lacked probable cause); *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 762 (7th Cir. 2006) (same).

Similarly, under Plaintiffs' version of events, Tiller shoved Snyder out of the building without provocation and repeatedly struck him, even though Snyder was not resisting arrest. Assuming these facts, it is clearly established that Snyder had a right not to be shoved from

behind and repeatedly punched by Tiller while on the ground.  The Seventh Circuit has held that

a right to be free from gratuitous abuse at the hands of the police is clearly established.  *See*, *e.g.*,

*Herzog v. Vill. of Winnetka*, 309 F.3d 1041, 1044 (7th Cir. 2002) (qualified immunity denied

where plaintiff produced evidence that the arresting officer shoved her to the ground even though

she was not resisting); *Frazell v. Flanigan*, 102 F.3d 877, 885 (7th Cir. 1996) ("[I]t is one thing

to use force in subduing a potentially dangerous or violent suspect, and quite another to proceed

to gratuitously beat him."); *Lester v. City of Chicago*, 830 F.2d 706, 714 (7th Cir. 1987) (finding

the plaintiff entitled to a jury trial based on her testimony that even though she did not resist

arrest, officers threatened to punch her, kneed her in the back, dragged her down a hallway, and

handcuffed her so tightly that her wrists were bruised), *overruled on other grounds by McNair v.

Coffee*, 279 F.3d 463 (7th Cir. 2002).

### 3. A Genuine Question of Material Fact Exists as to Whether Tiller is Entitled to Qualified Immunity

Under these facts, Plaintiffs have met their burden of showing that a genuine issue of

material fact exists as to whether Tiller violated one of Snyder's clearly established

constitutional rights.  Because "[t]he Court cannot at the summary judgment stage choose to

adopt one version of events over another," *Crenshaw v. Rivera*, No. 2:05-CV-440, 2009 WL

377985, at *17 (N.D. Ind. Feb. 12, 2009), this Court finds that Defendants are not entitled to

summary judgment on the issue of qualified immunity.


## IV. Conclusion

In sum, the evidence indicates that a genuine question of material fact exists as to

whether Officer Tiller is entitled to qualified immunity. Because they address proffered evidence unnecessary or irrelevant to the Court's determination that a question of material fact exists, the Court need not consider the undiscussed portions of Defendants' Motion to Strike or the entirety of Plaintiffs' Motion to Strike. *See May v. Gale Tschuor Co., Inc.*, No. 2:08-CV-172, 2010 WL 1837769, at *7 (N.D. Ind. May 5, 2010) (denying the defendant's motion to strike as moot because the defendant was entitled to summary judgment notwithstanding the plaintiff's unsupported assertions).

Based on the foregoing, Defendants' Rule 56 Motion to Strike [DE 69] is **GRANTED IN PART** (with regard to the slow-motion replay section of the video–minute 1'53" to 2'04"), **DENIED IN PART** (with regard to the remainder of the video), and **MOOT IN PART** (with regard to all other claims). Defendants' Motion for Summary Judgment [DE 41] is **DENIED IN PART** (with regard to the issue of qualified immunity) and **MOOT IN PART** (with regard to all other issues). Plaintiffs' Rule 56 Motion to Strike [DE 58] is **MOOT**. To the extent that this Order affects the substance of Plaintiffs' Partial Motion for Summary Judgment filed on January 20, 2010, this Court grants Plaintiffs leave to file an Amended Motion for Summary Judgment, if needed.

SO ORDERED.

ENTERED:   August 30, 2010

_____/s/ JON E. DEGUILIO_____
Judge
United States District Court